IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ANUP ENGQUIST,

                    Plaintiff,                                    CV. 02-1637-AC

          v.                                                       AMENDED[1]
                                                          OPINION AND ORDER

OREGON DEPARTMENT OF
AGRICULTURE, JOHN SZCZEPANSKI,
and JOSEPH (JEFF) HYATT,

                    Defendants.
_____

ACOSTA, Magistrate Judge:

*Introduction*

          Plaintiff Anup Engquist ("Engquist") filed suit against Defendants Oregon Department of

Agriculture, John Szczepanski, and Joseph (Jeff) Hyatt (collectively "Defendants"), for claims

arising from Engquist's employment and termination.  This case is before the court following

---

[1] The sole purpose of this amendment is to correct the amount of punitive damages awarded
in the conclusion, on page eleven (11), such that it is consistent with the amount correctly awarded
in the body of the opinion, on page nine (9).

AMENDED OPINION & ORDER                    1                                   {KPR}

remand from the Ninth Circuit on the parties' cross motions to amend the judgment entered by this court on February 4, 2005. For the reasons that follow, the court amends the judgment and awards Engquist a total of $85,000 in damages and $2340.79 in costs.

*Background*

Engquist originally filed this action on December 4, 2002. One year later, on December 15, 2003, Defendants made an offer of judgment to Engquist in the amount of $300,001.00, plus all costs and fees accrued through the date of the offer. Engquist did not accept Defendants' offer of judgment.

The parties tried the case to a jury from November 1, 2004, through November 18, 2004. The jury found for Defendants on Engquist's claims of employment discrimination based on race, gender, and national origin; and on her retaliation claim. Accordingly, Defendant Oregon Department of Agriculture ("the Department") "[was] entitled to [a] judgment dismissing all claims" and Defendants John Szczepanski ("Szczepanski") and Joseph (Jeff) Hyatt ("Hyatt") were thus "entitled to judgment dismissing claims for discrimination and retaliation based upon race, color, gender or national origin under the Equal Protection clause of the U.S. Constitution and 42 U.S.C. § 1981." (Abrams Aff., Ex. A at ¶ 6-7.) The jury found for Engquist on her "class of one" equal protection, substantive due process, and intentional interference with economic relations ("IIER") claims against the individual parties, Szczepanski and Hyatt.

The jury awarded damages in specific categories. For the equal protection violation, the jury awarded Engquist $150,000 in economic damages and $25,000 in non-economic damages. For the substantive due process violation, the jury awarded Engquist $10,000 in economic damages and $25,000 in non-economic damages. This amount was "merged into the larger sums awarded for

AMENDED OPINION & ORDER                2                                    {KPR}

deprivation of rights under the Equal Protection Clause[.]" (Abrams Aff., Ex. A at ¶ 1.) For the IIER claim, the jury awarded Engquist $35,000 in economic damages. This amount also was "merged into the larger sums awarded for deprivation of rights under the Equal Protection Clause." *Id.*

As for punitive damages, the jury awarded Engquist $70,000 against Szczepanski, $50,000 of which were attributed to the equal protection violation and $20,000 of which were attributed to the IIER claim. The jury also awarded Engquist $105,000 in punitive damages against Hyatt, $75,000 of which were attributed to the equal protection violation and $30,000 of which were attributed to the IIER claim. In accordance with Oregon Revised Statutes 31.375(1), $75,000 in punitive damages, representing sixty percent of the punitive damages awarded for IIER, was allocated to the Criminal Injuries Compensation Account of the Department of Justice Crime Victims' Assistance Section, (hereinafter "CICA"), for the individual defendants' liability on the state law claim for IIER.

As the prevailing party against Szczepanski and Hyatt, Engquist was entitled to reimbursement of costs and attorney fees. As the prevailing party against Engquist, the Department was entitled to reimbursement of costs. In a subsequent order dated March 29, 2005, the court addressed Defendants' bill of costs and Engquist's motion for attorney fees and costs. The court awarded Defendants costs in the amount of $3,511.43. The court awarded Engquist attorney fees of $172,740, and costs and other expenses of $21,396.16.

Szczepanski and Hyatt appealed to the Ninth Circuit Court of Appeals on the federal constitutional claims. On February 8, 2007, the Ninth Circuit reversed the equal protection claim as invalid and the substantive due process claim as unsupported by sufficient evidence. *Engquist*

AMENDED OPINION & ORDER                    3                    {KPR}

*v. Oregon Department of Agriculture*, 478 F.3d 985, 1010 (9th Cir. 2007). The court also "vacat[ed] the damages and attorneys' fees awards, and remand[ed] to the district court to determine what portion of these awards can be supported by Engquist's successful state law tort verdict." *Id.*[2]

Engquist appealed the Ninth Circuit decision and the Supreme Court granted certiorari to decide a single issue, whether a "class of one" equal protection claim is cognizable in the public employment context. On June 9, 2008, the Court held that it was not, and it affirmed the Ninth Circuit's decision. *Engquist v. Oregon Department of Agriculture*, 533 U.S. __ , 128 S. Ct. 2146, 2157 (2008). The case is thus remanded to this court to determine the proper allocation of damages, fees, and costs pursuant to the Ninth Circuit order.

### *Legal Standards*

Federal Rule of Civil Procedure ("Rule") 60 sets forth the standard for granting relief from a judgment or order. The rule states in relevant part: "[T]he court may relieve a party or its legal representative from a final judgment, order, or proceeding [where] . . . the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable . . . ." FED. R. CIV. P. 60(b)(5) (2008). Because the original judgment was based on claims that have been reversed and the damages on those claims have been vacated, the court must amend its earlier judgment to reflect the appellate courts' determinations.

Rule 68 governs offers of judgment. Where an offer is made and rejected, the rule provides that "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." FED. R. CIV. P. 68(d)

---

[2] Only Enquist's federal claims carried an attorney fee provision.

AMENDED OPINION & ORDER 4 {KPR}

(2007).  The language of this rule "is mandatory; the district court does not have the discretion to rule otherwise."  *Jordan v. Time, Inc.*, 111 F.3d 102, 105 (11th Cir. 1997).  Therefore, if the final judgment entered by this court is less than the offer of judgment Defendants made to Engquist, she may not recover her costs incurred after that date.

*Discussion*

The language of the original judgment awarded damages as follows:

> [Engquist] is entitled to judgment in the amount of $150,000 in economic and $25,000 in non-economic damages against [Szczepanski] and [Hyatt] on the claim for deprivation of rights under the Equal Protection Clause . . . . [Engquist] is further entitled to $10,000 in economic and $25,000 in non-economic damages against [Szczepanski] and [Hyatt] on the claim for deprivation of substantive Due Process rights . . . which amount is merged into the larger sums awarded for deprivation of rights under the Equal Protection Clause, and [Engquist] is further entitled to $35,000 in economic damages against [Szczepanski] and [Hyatt] on the claim for intentional interference with employment relations . . . which amount is merged into the larger sums awarded for deprivation of rights under the Equal Protection Clause.

(Abrams Aff., Ex. A at ¶ 1.)  The judgment also specified punitive damages on the IIER claim of $50,000 to Engquist and $75,000 to the CICA.

The court must decide the amount of economic, non-economic, and punitive damages appropriately attributed to the claim for IIER; the amount of costs recoverable by the parties; and the effect of the offer of judgment on the IIER award.[3]  The court will address each issue in turn.

1.    <u>Amount of damages</u>

   a.    *Economic damages*

Defendants argue for a straightforward reading of the original district court judgment.  The

---

[3] Engquist does not claim an entitlement to attorney fees as awarded in the original judgment. Such an award is no longer available because the federal claims giving rise to the attorney fee award have been dismissed, and the common law claim for IIER does not provide for recovery of attorney fees.

AMENDED OPINION & ORDER                    5                              {KPR}

plain language of the judgment states that Enquist is "entitled to $35,000 in economic damages . . . on the claim for [IIER]." (Abrams Aff. Ex. A at ¶ 1.) Thus, as IIER is the only claim remaining upon which Engquist may recover, Engquist is entitled only to the $35,000 economic damage award on that claim.

Engquist argues that the content of the verdict form, and the court's use of the term "merger," call for a "cumulative award" of economic damages, that is, an award that adds together the economic damages designated for each of the three claims upon which Engquist originally prevailed. In particular, Engquist cites the entries on the verdict form that state: "If you awarded damages on this claim *and* on any other claim, indicate whether any of the damages awarded on this claim are unique to this claim." (Plaintiff's Memorandum ("Pl.'s Memo."), Ex. A at 2-5.) The jury left each of these entries blank. Therefore, Engquist argues, the damages awarded were not unique to the claims for which they were awarded and, thus, upon any liability she is entitled to the sum of the awards for *all* claims. Engquist also cites the language of the judgment, which "merges" the economic damages for the substantive due process and IIER claims with the damages awarded for the equal protection claim.

Engquist's argument is unavailing. First, it rests on the verdict form, not the judgment actually entered in the case. Engquist never appealed the form of verdict submitted to the jury, and she thus waived that issue. *See Halloum v. Intel Corp.*, No. 07-15268, 2009 WL 118962, at *1 (9th Cir. Jan. 13, 2009) ("Halloum contends he was wrongly denied a jury trial and the right to present closing arguments. The record indicates, however, that Halloum did not object or otherwise argue these issues to the district court. Accordingly, we deem them waived."); *see also Campbell v. Burt,* 141 F.3d 927, 931 (9th Cir.1998) (refusing to consider issues not presented to the district court); *see*

*also Dodd v. Hood River County*, 59 F.3d 852, 863 (9th Cir. 1995) (appeals court does not consider an issue not raised below).

Second, as to the form of judgment, on appeal, Engquist challenged only the inclusion of the CICA as a recipient of part of her state law punitive damages award. *Engquist*, 478 F.3d at 992 ("Following the verdict, Defendants filed a motion for judgment notwithstanding the verdict, which the court denied. In addition, Engquist objected to the form of the judgment, presumably because the judgment listed the State of Oregon as a judgment creditor, but the district court overruled her objection."). Thus, Engquist never attacked the trial court's interpretation of the jury's verdict or the court's structuring of the judgment form to reflect that interpretation, and it is this interpretation upon which the Ninth Circuit based its decision. *See id.* at 990 ("A jury found the individual defendants liable for constitutional violations of equal protection and substantive due process, and for intentional interference with contract. The jury awarded Engquist $175,000 in compensatory damages and $250,000 in punitive damages."). The Ninth Circuit subsequently rejected Engquist's estoppel and standing arguments, and her federal constitutional challenges to the Oregon statute that required the inclusion of CICA in the judgment form. *Id.* at 999-1007. Thus, Engquist never raised on appeal any of the issues she now raises regarding either the verdict form or the form of judgment, and, again, in failing to do so has waived them.

Third, a proper reading of the verdict form and the judgment produces a conclusion opposite that advanced by Engquist. The uniqueness questions asked the jury to determine whether the amount awarded should be awarded in addition to the amounts already awarded. By leaving these entries blank, the jury indicated that the amount awarded was not to be considered in addition to the amount already awarded. Thus, to the extent that a larger amount of economic damages had been

AMENDED OPINION & ORDER                    7                    {KPR}

awarded on another claim, that non-unique amount was subsumed by the larger award. Indeed, Engquist's trial counsel so agreed when discussing the jury's award of compensatory damages with the trial judge and Defendants' counsel immediately after the jury returned its verdict. *See* Second Abrams Aff., Ex. J at 10:24-11:12 ("I agree with defense counsel that the total judgment for economic damages should be 150. For noneconomic, it should be 25, because on the fourth claim and on the fifth claim the amounts are less than on the third claim, and the jury has not filled in anything relating to unique damages, unique economic and unique noneconomic damages on those claims.").

This conclusion is supported by the language of the judgment which states that the awards for the substantive due process and IIER violations "merge" with the award for the equal protection violation. In other words, they become part of or are subsumed by the larger award. To suggest otherwise, that a finding of liability for only one of the three claims entitled Engquist to the sum of the damages for all three claims, is contrary to the plain language of the original judgment. Accordingly, the court awards Engquist economic damages in the amount of $35,000.

b.   *Non-economic damages*

Unlike the awards for the constitutional claims, the judgment does not award non-economic damages on Engquist's IIER claim. Thus, according to Defendant, Engquist is not entitled to non-economic damages, as her constitutional claims have been dismissed. Engquist again argues for the cumulative nature of the damages and that she is entitled to the sum of the non-economic damages awarded for her other claims, in the amount of $50,000.

Engquist's argument for cumulative treatment of non-economic damages fares no better than did her argument for cumulative treatment of her economic damages. As the verdict form and

judgment make clear, the jury did not award non-economic damages for her IIER claim.  That she should be entitled to non-economic damages arising from claims that have since been dismissed is without basis.  Accordingly, Engquist is not entitled to non-economic damages.

        *c.*     *Punitive damages*

        The parties are in agreement that the punitive damages attributed to the IIER claim are unaffected by the subsequent Ninth Circuit and Supreme Court rulings.  Thus, Engquist is entitled to $20,000 in punitive damages from Szczepanski and $30,000 from Hyatt.  The CICA is entitled to $30,000 from Szczepanski and $45,000 from Hyatt.

2.     <u>Offer of Judgment</u>

        Defendants claim that Engquist is not entitled to costs she incurred after the date of their offer of judgment, which she rejected.  Based on the court's determination of Engquist's damages, it is clear that the amount Engquist will actually recover is less than the offer of judgment made by Defendants on December 15, 2003.  Therefore, the court is bound by the requirements of Rule 68(d).

        Engquist argues that Defendants' claim for costs under Rule 68 should be denied because of a risk of chilling civil rights litigation and the public interest in resolving complex constitutional questions.  The Ninth Circuit stated in *Stanley v. University of Southern California*, 178 F.3d 1069, 1080 (9th Cir. 1999):

> [T]he imposition of such high costs on losing civil rights plaintiffs of modest means may chill civil rights litigation in this area.  While we reject Stanley's claims, we also note that they raise important issues and that the answers were far from obvious. Without civil rights litigants who are willing to test the boundaries of our laws, we would not have made much of the progress that has occurred in this nation since [*Brown v. Board of Education*, 347 U.S. 483 (1954)]."

*Id.*  However, as Defendants point out, "[this] argument was rejected by Judge Ashmanskas, who

noted that the award in *Stanley* was thirteen times the size of the cost bill in this action[,]" and that, unlike Stanley, there is no evidence that Engquist is unemployed or indigent. (Defs.' Reply Memo. 6 (citing Abrams Aff., Ex. B at 3).)

Although the case has progressed through two appeals before returning to this court on remand, there has been no material change on this point. Although Engquist accurately cites relevant authority for her position, she overlooks the essential distinction between her case and the authorities upon which she relies: she ultimately prevailed and was awarded money damages against the two individual defendants. Even without the damages awarded for constitutional claims and a reduced costs award resulting from the offer of judgment, Engquist still will net a recovery of both damages and costs.

     *a.*    *Defendants' Costs*

The court previously ruled on Defendants' costs bill. Judge Ashmanskas wrote: "The [Department] has committed no misconduct or other default that is worthy of punishment. There is no evidence that [Engquist] is of modest means, is unable to pay the cost bill, or that the imposition of the award would have a chilling effect on civil rights litigants. Accordingly, the court grants defendants' Bill of Costs in the amount of $3,511.43." (Abrams Aff., Ex. B at 3.) The appellate court decisions do not alter Defendants' entitlement to costs as the prevailing party on claims against the Department. Accordingly, Defendants' award of costs, in the amount of $3,511.43, stands.

     *b.*    *Engquist's costs*

Defendants' argue that Engquist's cost award must be reduced by the amount of "those sums expended by Engquist after December 15, 2003 . . . ." (Defs.' Memo. 6.) The court agrees that Rule

AMENDED OPINION & ORDER          10          {KPR}

68 dictates that result. Thus, Engquist is awarded all costs incurred prior to December 15, 2003, in a total amount of $5,852.22. That amount less the amount Engquist owes Defendants is $2,340.79 and represents Engquist's net total costs award.

<em>Conclusion</em>

For the reasons stated above, the judgment as to damages and costs is amended as follows: Szczepanski and Hyatt shall pay $85,000 in damages and $2,340.79 in costs to Engquist, consistent with this opinion. In addition, Szczepanski and Hyatt shall pay $30,000 and $45,000, respectively, to the CICA.

IT IS SO ORDERED.

DATED this 9th day of March, 2009.

JOHN V. ACOSTA
United States Magistrate Judge